IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Columbia Division

| | |
|---|---|
| **MELTECH CORPORATION, INC.** ) <br> 3321 75th Avenue, Suite G ) <br> Landover, MD 20785 ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **TYLER CONSTRUCTION GROUP, INC.** ) <br> 433 Rabon Road ) <br> Columbia, SC 29223 ) <br> ) <br> and ) <br> ) <br> **WESTFIELD INSURANCE COMPANY** ) <br> One Park Circle ) <br> Westfield Center, OH 44251 ) <br> ) <br> Defendants ) <br> ) | Case No.:  3:25-cv-01993-MGL |

## COMPLAINT

Plaintiff Meltech Corporation, Inc. ("Meltech"), by counsel, and for its Complaint against Defendants Tyler Construction Group, Inc. ("Tyler") and Westfield Insurance Company ("Westfield") alleges and states as follows:

### Parties

1.     Plaintiff Meltech is a corporation organized under the laws of the State of Maryland that provides general contractor construction services.  Meltech's principal place of business is located at 3321 75th Avenue, Suite G, Landover, MD 20785.

2.     Defendant Tyler is a corporation organized under the laws of the State of South Carolina that provides construction related services. Tyler's principal place of business is located at 433 Rabon Road, Columbia, SC 29223.

3.     Defendant Westfield is a corporation organized under the laws of the State of Ohio that provides, among other services, surety bonds for construction projects. Westfield's principal place of business is located at One Park Circle, Westfield Center, OH 44251.

## Jurisdiction and Venue

4.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because Meltech and both defendants are, for diversity jurisdiction purposes, citizens of different states, and the amount in controversy exceeds $75,000.00.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Tyler maintains its principal place of business in Columbia, South Carolina, and a substantial part of the events giving rise to this action occurred within this judicial district.

## Factual Background

6.     On April 4, 2022, the United States Air Force ("USAF") issued a Request for Proposals (the "RFP") for project VKAG 18-1095 (the "Project") for the design and construction of upgrades and repairs to hangar building 4522 at the Seymour Johnson Air Force Base (the "SJAFB") in Goldsboro, North Carolina. This Project was a federal procurement subject to the Federal Acquisition Regulations ("FAR").

7.     In May 2022, Meltech contacted Tyler to inquire about its experience working on similar projects and to seek its participation in preparing a proposal to Meltech for it to use in securing award of the Project from USAF. Tyler and Meltech had worked collaboratively together on other projects in the past.

8. In its communications with Meltech concerning the Project, Tyler confirmed its successful experience working on the SJAFB and on other similar USAF hangar projects. Tyler also noted its positive relationship with local subcontractors and its interest in teaming with Meltech and providing a "turnkey" price proposal to Meltech to complete the entire Project with the exception of the Project design services.

9. The "turnkey" proposal discussed between Meltech and Tyler involved Tyler providing Meltech with a price to function as a general trades subcontractor to perform the entirety of the construction requirements for the Project, with Meltech separately engaging a design professional for the required design activities.

10. Meltech advised Tyler it would exclusively use and rely upon Tyler's turnkey construction pricing to prepare its own proposal to USAF, as had been the case where the two had collaborated previously.

11. As set forth in the FAR, the RFP required that the successful awardee supply performance and payment bonds from a qualified surety consistent with the federal Miller Act, 40 U.S.C. §§ 3131-3134 (the "Miller Act").

12. Because of the expected dollar value of the Project, it was essential to Meltech's surety that the turnkey subcontractor provide performance and payment bonds for the full value of Tyler's subcontract. Having Tyler provide these bonds would protect Meltech and its surety given that Meltech was separately required to provide performance and payment bonds to the federal government pursuant to the Miller Act.

13. Tyler confirmed in response to Meltech's inquiries that it would be able to obtain performance and payment bonds for the full value of its subcontract from its surety to secure its Project obligations and protect Meltech's and its surety's interests.

14. Tyler agreed to prepare a turnkey construction pricing proposal for Meltech's exclusive use in securing award of the Project from USAF.

15. To prepare its proposal, Tyler representatives visited the Project site twice in May 2022 as members of the Meltech Project team. Meltech also supplied Tyler with a copy of the RFP documents issued by USAF for the Project.

16. On June 15, 2022, Tyler transmitted to Meltech a quotation in the amount of $18,068,500.00 for a "turnkey project minus A/E [architect/engineer] fees." The following day, Tyler's president, Charles Tyler, confirmed to Meltech that he was "1000% positive we can do the project turn-key for $18 million."

17. Meltech accepted Tyler's proposal and, in reliance upon Tyler's pricing, Meltech submitted its proposal response to the RFP (the "Proposal") to USAF on June 16, 2022 in the amount of $23,871,915.00, inclusive of mark-ups for project management, overhead, profit, surety bonds, and design costs not covered by Tyler's proposal.

18. Pursuant to the terms of the RFP, USAF's proposal acceptance period lasted until September 30, 2022.

19. Due to government funding issues, on September 6, 2022, USAF requested that Meltech extend the period for acceptance of its proposal until November 15, 2022. Before agreeing to USAF's request for a time extension, Meltech informed the USAF that it needed to confirm with its teaming subcontractor on its willingness to extend its pricing to Meltech. Meltech then inquired with Tyler as to whether it would agree to honor and extend its proposal price to Meltech until November 15, 2022.

20. Tyler informed Meltech on September 8, 2022 that it would honor its pricing until November 15, 2022. Meltech thereafter agreed to USAF's extension request on September 9, 2022.

21. Upon request of Meltech's surety agent, on November 11, 2022, Tyler's bonding company, Westfield, issued a letter to Meltech confirming it was "willing to write bonds to $25,000,000 with the potential of larger if needed" and that "Tyler Construction is currently in good standing with Westfield…." Westfield concluded its letter by stating "We are proud to recommend this fine organization to you."

22. Subsequent to the issuance of its November 11, 2022 letter, Meltech's surety bonding representative spoke directly with a representative of Westfield who confirmed unequivocally that Tyler was approved for bonding for the Project and that Westfield would issue the required performance and payment bonds upon receiving a binding subcontract.

23. USAF awarded Meltech a contract for the Project in the amount of Meltech's proposal price. Meltech thereafter informed Tyler of the award.

24. Relying upon Tyler's representations and its proposal, as well as the assurances of Westfield concerning its intent to issue performance and payment bonds securing Tyler's performance and payment obligations, Meltech issued a subcontract (the "Subcontract") to Tyler on November 11, 2022 for the construction scope of work covered in Tyler's proposal.

25. Tyler subsequently informed Meltech it did not have any issues with the Subcontract, it would sign and return the document to Meltech, and that it would immediately begin work.

26. Over the weeks that followed, Tyler commenced performance of its Subcontract obligations by performing various pre-construction activities including, but not limited to:

    (A)    Initiating contact with and requesting pricing information from second-tier subcontractors;

    (B)    Preparing a baseline project schedule;

    (C)    Attending meetings at the Project site;

    (D)    Requesting base clearance for second-tier subcontractor representatives to access the Project site;

    (E)    Coordinating with Meltech on Requests for Information to USAF;

    (F)    Requesting that second-tier subcontractors mobilize equipment to the Project site; and

    (G)    Conducting its own preparatory operations at the Project site.

27.    Article 21 of Tyler's Subcontract states, ". . . Should Subcontractor commence performance prior to both parties executing the Subcontract, that act will be deemed an implied acceptance of the original terms of this agreement as transmitted by Contractor to Subcontractor."

28.    At no point during its performance of the above-noted pre-construction activities did Tyler ever communicate to Meltech any objections to any of the terms of the Subcontract Meltech issued to Tyler.

29.    Despite its prior representations and the commencement of pre-construction activities required under the Subcontract, on January 16, 2023, Tyler informed Meltech that it would not honor its Subcontract and would not perform any further work on the Project unless it was allowed to significantly modify its pricing.

30.    On January 25, 2023, Meltech issued to Tyler a written Notice to Cure, demanding Tyler provide it with copies of its payment and performance bonds, a list of subcontractors it intended to use for the Project, and its complete schedule of values.

31. Tyler thereafter failed to comply with the Notice to Cure and abandoned the Project.

32. Meltech subsequently investigated pricing for the various components of the work covered under Tyler's original proposal. This included pricing for the mechanical, electrical, roofing, concrete and other trades required to complete the scope of work set forth in USAF's RFP.

33. Meltech's investigation revealed that the cost of performing the work abandoned by Tyler would result in the possibility of substantial losses.

34. Based upon USAF's interpretation of the scope of work in the RFP and the estimated cost of performing the construction work, Tyler substantially underbid the Project scope in its proposal.

35. Tyler communicated to Meltech that it had made a mistake in the pricing for its proposal to Meltech.

36. Meltech notified USAF of Tyler's position that it had made a mistake in its proposal that likewise impacted Meltech's Proposal. Pursuant to the FAR, a bid mistake is an event that might allow withdrawal of the Proposal without any consequences under certain limited circumstances.

37. USAF requested that Meltech explain the factual reasons for and nature of Tyler's mistake that impacted the Proposal.

38. Meltech advised Tyler of USAF's request, but Tyler did not provide any explanation for its alleged mistake in its pricing.

39. On December 5, 2023, Meltech provided Tyler with a letter explaining that it anticipates losses in excess of $10 million to fully perform the construction phase of the Project and demanding that Tyler accept responsibility for those losses.

40. On December 18, 2023, Tyler denied responsibility for Meltech's anticipated losses.

41. After performing nearly all of the design work for the Project and beginning arrangements for the construction portion of the job, Meltech convinced the USAF to rescind the contract for reasons other than the bid mistake alleged by Tyler. Nevertheless, Meltech incurred substantial performance and other related costs prior to USAF's agreement to rescind the contract that it would not have incurred but for Tyler's breach and abandonment of its Subcontract.

## Count I
### (Breach of Contract)

42. Meltech incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

43. In November 2022, Meltech issued a Subcontract to Tyler to perform its work on the Project in accordance with the pricing contained in Tyler's June 2022 proposal.

44. After receipt of its Subcontract, Tyler manifested its acceptance of the Subcontract, both through its conduct and by operation of the terms of the Subcontract document itself, by communicating to Meltech that it would sign the Subcontract, by failing to advise Meltech of any objections to the Subcontract terms, and by commencing performance of Subcontract activities.

45. On January 16, 2023, Tyler materially breached the Subcontract by refusing to continue its work on the Project and thereafter abandoning the Project.

46. Despite receiving a subsequent Notice to Cure, Tyler failed to remedy its breach.

47. As a result of Tyler's material breach of the Subcontract, Meltech has sustained damages that exceed $3 million.

**WHEREFORE**, Meltech demands judgment against Tyler for: (1) damages in excess of $3,000,000.00, with the final amount to be determined at trial; (2) pre-judgment and post-judgment

interest; (3) reasonable attorney's fees, costs, and expenses associated with this litigation; and (4) any other remedy this Honorable Court deems just and proper.

## Count II
### (Promissory Estoppel – in the alternative)

48. Meltech incorporates by reference the allegations of paragraphs 1-41 as if fully set forth herein.

49. The doctrine of promissory estoppel allows a party to recover for damages incurred as a result of its reliance on a promise made by another party.

50. Tyler made an unambiguous and unequivocal promise to Meltech that it would perform its work on the Project for the amount specified in its June 2022 quotation.

51. Tyler expected Meltech to rely upon its quotation in Meltech's preparation of its own proposal to the USAF to secure an award of the contract for the Project.

52. Meltech relied upon Tyler's quotation in submitting its Proposal to USAF pursuant to the RFP for the Project.

53. USAF awarded Meltech a contract for the work on the Project.

54. Based upon Tyler's quotation and promise of performance, Meltech issued a Subcontract to Tyler and Tyler thereafter commenced performance of the Project work.

55. Tyler subsequently refused to continue performance despite its earlier commitment to complete the work for the amount indicated in its June 2022 quotation, as confirmed by Tyler when it agreed to extend its pricing with full knowledge that Meltech was relying upon that pricing prior to extending its own price to USAF.

56. In the event that Meltech and Tyler did not have a binding Subcontract, Tyler is responsible for any losses sustained by Meltech as a result of its refusal to abide by its promise to complete the construction work on the Project for the amount indicated in its June 2022 quotation.

57. Meltech has sustained damages anticipated to exceed $3 million as a result of its reliance on Tyler's promise.

58. Tyler is responsible for the payment of all losses incurred by Meltech on the Project as a result of its refusal to perform the Project construction work for the amount stated in Tyler's June 2022 quotation.

**WHEREFORE**, Plaintiff Meltech demands judgment against Defendant Tyler for: (1) damages in excess of $3,000,000.00, with the final amount to be determined at trial; (2) pre-judgment and post-judgment interest; (3) reasonable attorney's fees, costs, and expenses associated with this litigation; and (4) any other remedy this Honorable Court deems just and proper.

## Count III
### (Promissory Estoppel – Against Westfield)

59. Meltech incorporates by reference the allegations of paragraphs 1-41 as if fully set forth herein.

60. The doctrine of promissory estoppel allows a party to recover for damages incurred as a result of its reliance on a promise made by another party.

61. Westfield made a promise directed to Meltech that it would issue performance and payment bonds on behalf of Tyler for the Project once Meltech issued a binding subcontract.

62. Westfield expected Meltech to rely upon its promise to issue performance and payment bonds on behalf of Tyler in awarding Tyler a subcontract for the Project, thereby securing premiums for the issuance of its surety bonds on Tyler's behalf.

63. Based upon Westfield's promise to issue surety bonds securing Tyler's performance and payment obligations, Meltech issued a binding Subcontract to Tyler and Tyler thereafter commenced performance of the Project work.

3:25-cv-01993-MGL     Date Filed 03/18/25     Entry Number 1     Page 10 of 12

64. Westfield subsequently reneged on its promise to issue performance and payment bonds securing Tyler's Project obligations.

65. Westfield is responsible for any losses sustained by Meltech as a result of its refusal to abide by its promise to issue performance and payment bonds for Tyler, thereby removing the security upon which Meltech had relied in issuing the Subcontract to Tyler and exposing Meltech to damages due to Tyler's breach and abandonment of the Subcontract.

66. Meltech has sustained damages anticipated to exceed $3 million as a result of its reliance on Westfield's promise.

67. Westfield is responsible for the payment of all losses incurred by Meltech on the Project as a result of its refusal to issue performance and payment bonds on behalf of Tyler to secure its Subcontract obligations for the Project.

**WHEREFORE**, Plaintiff Meltech demands judgment against Defendant Westfield for: (1) damages in excess of $3,000,000.00, with the final amount to be determined at trial; (2) pre-judgment and post-judgment interest; (3) reasonable attorney's fees, costs, and expenses associated with this litigation; and (4) any other remedy this Honorable Court deems just and proper.

## Jury Demand

Meltech demands a trial by jury on all Counts as set forth in this Complaint.

Dated: March 18, 2025

        **ROGERS TOWNSEND, LLC**

        *s/ Roy Shelley*

        T. McRoy Shelley, III, Federal I.D. # 6681
        1221 Main St., 14th Floor (29201)
        Post Office Box 100200
        Columbia, South Carolina 29202
        Main: 803-771-7900; Direct: 803-744-1818
        Roy.Shelley@RogersTownsend.com;

        *Attorneys for Plaintiff Meltech Corporation, Inc.*

        and

        Fred A. Mendicino, Esquire
        mendicino@FM-LawFirm.com;
        Brian M. Silver, Esquire
        silver@FM-LawFirm.com;
        Faughnan Mendicino, PLLC
        21355 Ridgetop Circle, Suite 110
        Dulles, Virginia 20166
        Tel: 571-434-7590
        *Pro Hac Vice Application Pending*

        and

        Leonard A. Sacks, Esquire, DCB No.150268
        Leonard A. Sacks & Associates, P.C.
        One Church Street, Suite 201
        Rockville, Maryland 20850
        Tel: 301-738-2470
        lsacks@laspc.net
        *Pro Hac Vice Application Pending*